**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**TRINA SELLERS**                                                                                     **PLAINTIFF**

**vs.**                                                       **CIVIL ACTION NO. 3:14CV69-SAA**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security Administration**          **DEFENDANT**

**MEMORANDUM OPINION**

      This is an appeal under 42 U.S.C. § 405(g) of a decision by the Commissioner of Social Security denying an application by plaintiff Trina Sellers for a period of disability (POD) and disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act. Plaintiff applied for disability on September 17, 2010, alleging disability beginning on September 8, 2010. Docket 11, p. 98-104. Plaintiff's claim was denied initially on December 14, 2010, and upon reconsideration on June 3, 2011. *Id.* at 49-52, 54-56. She filed a request for hearing (*Id.* at 57) and was represented by counsel at the hearing held on October 31, 2012. *Id.* at 26-46. The Administrative Law Judge (ALJ) issued an unfavorable decision on January 28, 2013 (*Id.* at 9-21), and on February 4, 2014, the Appeals Council denied plaintiff's request for a review. *Id.* at 1-3. Plaintiff timely filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review.

      Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

# I. FACTS

Plaintiff was born on February 26, 1958 and has a high school education. Docket 11, p. 30-31. She was fifty-one years old at the time of her application and fifty-three years old at the time of the hearing. Her past relevant work was as a daycare center worker. *Id.* at 31-32, 118. Plaintiff contends that she became disabled before her application for disability as a result of neuropathy and hand, back and leg pain. Docket 11, p. 117, 121. The ALJ determined that plaintiff suffered from "severe" impairments of "lumbar and cervical spondylosis, hypertension, carpal tunnel syndrome" (Docket 11, p. 14), but that her impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). *Id.* at 15.

Based upon testimony by the vocational expert [VE] at the hearing, and after considering the record as a whole, the ALJ determined that plaintiff retains the Residual Functional Capacity (RFC) to

> perform a full range of light work as defined in 20 C.F.R. 404.1567(b) with exceptions. The claimant is limited to light work. She can never climb ladders, ropes, or scaffolds. She can only occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, crouch, kneel, and crawl. She would need to avoid all commercial driving, all work with moving, hazardous, or dangerous machinery, and all work at unprotected heights.

Docket 11, p. 16. Upon further analysis under applicable rulings and regulations, the ALJ determined that plaintiff was less than fully credible in describing the intensity, persistence and limiting effects of her claimed symptoms, limitations and subjective complaints. *Id.* at 19. The ALJ evaluated all of the evidence in the record, including testimony of both plaintiff and a VE at the hearing, and held that plaintiff could perform her previous job as a daycare center worker.

*Id.* at 20. As a result, the ALJ concluded that plaintiff is not disabled under the Social Security Act. *Id.* at 21.

Plaintiff claims that the ALJ erred by improperly evaluating plaintiff's residual functional capacity ("RFC"), finding plaintiff not fully credible and by concluding that she could perform her past work. Docket 15.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[3] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the

---

[1] *See* 20 C.F.R. §§ 404.1520 (2010).

[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[3] 20 C.F.R. §§ 404.1520(b) (2010).

[4] 20 C.F.R. §§ 404.1520(c) (2010).

[5] 20 C.F.R. §§ 404.1520(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

physical and mental demands of her past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[7] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court must scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). A federal court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to

---

[6] 20 C.F.R. §§ 404.1520(e) (2010).

[7] 20 C.F.R §§ 404.1520(g) (2010).

[8] *Muse*, 925 F.2d at 789.

[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[10] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

**A. Whether the ALJ erred in assessing plaintiff's residual functional capacity**

Plaintiff claims the ALJ erroneously assessed plaintiff's residual functional capacity ("RFC") because he did not afford the proper weight to the opinion of plaintiff's treating physician in formulating the RFC. Docket 15, p. 5. The court holds that the ALJ properly weighed Dr. Lyons's opinion and was not required to afford the doctor's opinion as to plaintiff's functional abilities the most weight. Further, it was unnecessary for the ALJ to order a consultative examination as suggested by plaintiff.

Dr. Lyons limited plaintiff to standing/walking less than two hours in an eight hour workday, periodically alternating between sitting and standing, limited pushing and pulling in her lower extremities, never climbing ramps, stairs, ladders, ropes or scaffolds, occasionally balancing, stooping, kneeling, crouching or crawling. Docket 11, p. 244-46. Despite these severe limitations, nothing in Dr. Lyons's records indicates that plaintiff's impairments are more severe than the ALJ found them to be. In fact, Dr. Lyons's medical records never mention plaintiff's functional limitations. Plaintiff only saw Dr. Lyons on four occasions from October

2011 through February 2012 (Docket 11, p. 287-91), and he did not complete the Physical Assessment Form until eight months after last examining plaintiff. Docket 11, p. 244-46. In his Physical Assessment Form, Dr. Lyons did not provide any opinion as to plaintiff's ability to push and pull with her upper extremities, but he did note that she was unlimited in her manipulative abilities, including reaching in all directions. *Id.*

Plaintiff argues that Dr. Lyons' indication of "N/A" on the lifting/carrying portions of the check box form suggests that he believed she could not lift or carry at all. In the court's opinion this conclusion does not seem logical. First, Dr. Lyons is a podiatrist. It is more logical that he felt he was not properly qualified to provide an opinion as to plaintiff's abilities to lift and carry. Additionally, he did not mark the box indicating that plaintiff was limited in the upper extremities, which would have supported plaintiff's argument. The undersigned can only conclude that Dr. Lyons intended to either provide no opinion as to plaintiff's ability to lift and/or carry or that he did not feel she was limited in that area at all.

The other records contained in the file from Dr. Lyons similarly do not support the severe functional limitations which he assigned in his Physical Assessment Form. For instance, Dr. Stefan Cowles's interpretation of the MRI of plaintiff's right foot was "mild talonavicular arthritic changes and secondary bony changes identified . . . [o]therwise negative," and the Doppler ultrasound of her legs was within normal limits. Docket 11, p. 297-98. Similarly, Dr. Vu examined plaintiff's pelvic MRI and noted that despite a probable degenerative cyst, "no acute abnormality [was] seen." Docket 11, p. 294. A review of an MRI of plaintiff's left foot led Dr. Vu to conclude that plaintiff had "minimal effusion in tibiotalar and subtalar joint of uncertain significance. MRI of the left hindfoot is otherwise normal." *Id.* at 295. In other

6

words, while plaintiff has some abnormalities, the examining physicians found no severe impairments.

According to the Fifth Circuit, "isolated comments regarding a patient's complaints do not constitute medical findings as required by the Act." *McLendon v. Barnhart*, 184 F.App'x 430, 432 (5th Cir. 2006). Further, the Fifth Circuit has held it proper for an ALJ to give no weight to the checklist in cases such as this where there is no objective evidence to support the checklist MSS provided by a treating physician. *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012). Simply put, while plaintiff has had multiple tests conducted, there is no evidence in the record to support the severe limitations that Dr. Lyons placed on the plaintiff in his check box assessment. Because Dr. Lyons's Physical Assessment Form is not supported by objective record evidence, the ALJ properly afforded little weight to his opinions regarding standing, walking, pushing/pulling, need for alternating sitting/standing, and gave some weight to his opinions regarding postural activities based upon plaintiff's testimony and use of medications. Docket 11, p. 18. The undersigned further finds that the ALJ did not err when she accorded Dr. Saddler's opinion great weight as it was supported by the record as a whole. Her reliance upon Dr. Saddler's opinion in determining the plaintiff's RFC was proper.

A "plaintiff is required to establish that she suffered from a[n] impairment of disabling severity. The mere presence of some impairment is not disabling per se. Plaintiff must show that she was so functionally impaired by her [condition] that she was precluded from engaging in any substantial gainful activity." *Hames v. Heckler*, 707 F.2d 162, 165 (5th 1983). There is no indication in Dr. Lyons's records that plaintiff had any condition that was so severe that she is precluded from engaging in any substantial gainful activity. Based upon a thorough review of

7

Dr. Lyons's records, as well as the remaining record evidence and consulting examiner's opinion, there is no impairment severe enough to prevent plaintiff from engaging in any substantial gainful activity. Thus, plaintiff's assertion that the ALJ failed to afford Dr. Lyons's opinions the proper weight is without merit, as is the argument that the ALJ erred in assessing plaintiff's RFC.

### B. Whether the ALJ properly considered plaintiff's credibility

Plaintiff contends that the ALJ erred when she gave little weight to plaintiff's allegations and subjective complaints and when she did not properly consider SSR 96-7 or 20 C.F.R. § 404.1529. Docket 15, p. 9-11. However, the court has reviewed the record, and it is clear that the ALJ did properly consider plaintiff's subjective complaints and the requisite factors necessary to assess plaintiff's credibility.

The ALJ thoroughly discussed plaintiff's impairments, her daily activities, her medical treatment and medications and the objective medical evidence of record. Specifically, the ALJ noted that even though plaintiff testified that she cannot perform self-care functions or sit/stand for extended periods of time, Dr. Lyons found no problems with manipulation that would limit plaintiff's abilities to care for herself. Docket 11, p. 20. The ALJ addressed in some detail plaintiff's testimony and the third party function report from plaintiff's daughter concerning plaintiff's abilities, and she contrasted those statements with one another, with plaintiff's statements at the hearing and the objective medical evidence concerning her limitations. The ALJ also noted that plaintiff has sought and received significantly less medical treatment than would reasonably be expected in a person with debilitating symptoms and noted that plaintiff actually went to the doctor much less often than her testimony reflected. Docket 11, p. 23.

Additionally, the ALJ considered one physician's notation that plaintiff had multiple unrelated hospital visits that she suspected were due to secondary gain – plaintiff's attempt to support her claim for disability. *Id.* Given that the Fifth Circuit routinely has held that the ALJ is in the best position to assess a claimant's credibility, *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994),[11] the undersigned holds that the ALJ properly considered all of the factors necessary to properly evaluate plaintiff's credibility.

**C. Whether the ALJ properly determined that plaintiff can perform her past work**

Plaintiff asserts that the ALJ improperly determined that she could perform her past work as a daycare center worker because the hypothetical provided to the vocational expert ("VE") did not include the limitations imposed by Dr. Lyons. As discussed above, the ALJ's did properly make a finding of fact as to plaintiff's RFC and the physical and mental demands of her past work in reaching her determination that plaintiff's RFC allows her to return to the previous work. Therefore, plaintiff's argument is without merit.

## IV. CONCLUSION

Reading the record as a whole, the court concludes that the ALJ's opinion is supported by substantial evidence and should be affirmed. It is clear that the ALJ reviewed the entire record, properly identified the relevant listed impairments, fully discussed the evidence that was contained in the record and concluded that the balance tipped toward functional ability in determining whether the plaintiff's impairment met or equaled a listed impairment. The ALJ performed a thorough analysis of the plaintiff's impairments and clearly considered the

---

[11]See also *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983); *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

plaintiff's treatment records. The plaintiff did not provide credible evidence that her alleged impairment affects her ability to work, and the ALJ more than adequately explained her reasons for questioning the plaintiff's credibility. As a consequence, the undersigned holds that the decision of the Commissioner should be affirmed.

After diligent review, the court holds that the ALJ's decision was supported by substantial evidence and must be affirmed. A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 26th day of November, 2014.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE